UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LISA M.,                                    :
              Plaintiff,                    :
                                            :
        v.                                  :    C.A. No. 24-196PAS
                                            :
LELAND C. DUDEK,                            :
Acting Commissioner of Social Security,     :
              Defendant.                    :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Lisa M. filed her fifth disability application on August 31, 2021, seeking

Supplemental Security Income ("SSI") based on an alleged onset on February 1, 2020, the day

following the denial of her fourth set of applications.  See Lisa M. v. Kijakazi, C.A. No. 20-

471MSM, 2021 WL 5035985 (D.R.I. Oct. 28, 2021), adopted, 2022 WL 951618 (D.R.I. Mar. 30,

2022) (affirming denial of Plaintiff's fourth set of applications).  Similar to the third and fourth

set of applications, the fifth application alleges migraine, as well as vertigo, cervical spine injury,

shoulder injury and memory problems that Plaintiff claims she has experienced due to a motor

vehicle accident on July 27, 2017.  However, by the time of the period in issue, Plaintiff was no

longer receiving treatment from the neurologist, orthopedist, pain specialist, or ear/nose/throat

("ENT") specialist whose treating records were collected for the prior applications.  For the

current period (beginning on the date of application, August 31, 2021), Plaintiff's only medical

treatment consists of less than ten appointments with her primary care physician, Dr. Marla

Hansel, and one appointment with a gastroenterologist.

Based on the dearth of medical treatment, the lack of any objective evidence of medically

determinable impairments, and Plaintiff's failure to respond to requests of the Social Security

Administration ("SSA") for information regarding her symptoms in support of her application, all four of the non-examining experts at the initial and reconsideration phases found the evidence of limiting symptoms or impairments insufficient for adjudication. To bring the objective evidence of Plaintiff's claimed impairments from the prior applications into the current record, the administrative law judge ("ALJ") – with no objection from Plaintiff – uploaded and considered more than two hundred pages of additional medical evidence submitted in connection with the prior applications. Based on consideration of this expanded record and on Plaintiff's hearing testimony, the ALJ found that Plaintiff's diagnosed persistent postural perceptual dizziness moderately limits her ability to understand, remember and apply information and to concentrate, persist and maintain pace, as well as that she has severe impairments – cervical and lumbar degenerative disc disease, vertigo, post-concussion syndrome, myofascial pain and obesity – but retains the residual functional capacity ("RFC")[1] to perform light work based on simple instructions, no production rates, assembly line work or hourly quotas with significant postural and environmental limitations. Based on this RFC and testimony from a vocational expert, the ALJ found that Plaintiff had not been disabled at any time since the application was filed on August 31, 2021.

Now pending before the Court is Plaintiff's motion to reverse the decision of the Acting Commissioner. ECF No. 9. She argues that the ALJ erred in rejecting as unpersuasive the sedentary exertional limits and work-preclusive absenteeism and off-task time opined to by her treating primary care physician, Dr. Marla Hansel. She also contends that the ALJ erred in finding dizziness resulting in moderate mental limits at Step Three, yet failed to include the

---

[1] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

inability to sustain a normal work schedule in the RFC.  The Acting Commissioner argues that the ALJ properly applied the law to the substantial evidence of record; he has filed a counter motion for an order affirming the decision.  ECF No. 10.  The motions are before me on consent pursuant to 28 U.S.C. § 636(c).

## I. __Background__

On July 27, 2017, Plaintiff Lisa M., a woman in her late forties who had been working as a cashier, was in a motor vehicle accident; post-accident diagnostics resulted in cervical spine imaging showing possible muscle spasm and mild cervical disc disease.  Over the four years following the accident, Plaintiff complained of neck/shoulder pain, head and ear pressure, dizziness, vertigo, blurred vision and hearing loss and had diagnostic/treating encounters with her primary care physician, Dr. Marla Hansel; an orthopedist, Dr. William Brennan; an ENT specialist, Dr. George Jacewicz; a neurologist, Dr. Jonathan Sarezky; and a pain specialist for injections.  She also had a consulting examination performed by SSA psychologist Dr. Louis Turchetta based on her allegations of information-processing and word-retrieval difficulties due to the accident.  These records were found by the prior ALJ to establish non-work-preclusive mental limitations, based on no concerning findings by the neurologist (including a brain MRI with findings that were interpreted as normal); no findings by the ENT specialist; largely normal examinations by the primary care physician (including normal strength and gait); no acute findings by the orthopedist (a CT showing some cervical disc disease with tenderness, mild spasm, and some range of motion limits on examination); average cognitive functioning and low average memory and processing speed; but ongoing subjective complaints of dizziness and neck/shoulder pain.  Apart from injections, treatment for pain was largely over-the-counter pain medication (Aleve), physical therapy and recommendations of exercise.  See generally Lisa M.,

2021 WL 5035985, at *2-8.  The prior treating record contains consistent observations by Dr.

Hansel, Dr. Sarezky and Dr. Brennan of Plaintiff's normal gait and normal ability to walk.  E.g.,

Tr. 473, 487, 546.

The updated records for the current application contain the last treating record of Dr.

Brennan, the orthopedist: dated January 13, 2020, well prior to the current period, it reflects

Plaintiff's ongoing complaints of "some pain" but objective examination findings of normal gait

and walking, full cervical range of motion and no observations of tenderness or muscle spasm.

Tr. 294.  After this January 2020 appointment, Plaintiff did not return to Dr. Brennan again.  Nor

did Plaintiff seek any further treatment for pain after 2020.  Tr. 44-45.  In addition, there is a

record reflecting a pre-application encounter with the ENT specialist.  In response to Plaintiff's

ongoing complaint of dizziness and noting her history of "[o]ccasional" migraines, this specialist

performed vestibular and other testing with uniformly normal results.  Tr. 296-300.  She

diagnosed persistent postural perceptual dizziness and prescribed a serotonergic medication that

Plaintiff was hesitant to try because of its antidepressant effects.  Tr. 300; see Tr. 371 (does not

want to take medication recommended to treat perceptual dizziness).  And Plaintiff declined to

take the medication prescribed to be taken as needed for dizziness by the neurologist, whom she

saw in the pre-application period, because, as she testified, "I didn't feel I needed that one."  Tr.

49.

Finally, still prior to the period in issue, the current record reflects four 2021

appointments (three remote, one in-person) with Dr. Hansel.  These summarize Plaintiff's

medical history as reflecting "no acute concerning finds" on MRI or imaging, the

recommendation of the neurologist that she "jog or bike ride," and migraines that "are better."

Tr. 370-81.  Dr. Hansel's only 2021 findings on examination are entirely normal, including

"[w]ell appearing, NAD," with a supple neck and no findings of any issues with walking, gait, the musculoskeletal system or the extremities. Tr. 377. In sharp contrast to the opinion she later signed in support of Plaintiff's application, Dr. Hansel's 2021 treating notes make no mention of the right shoulder/neck pain, memory changes, word finding difficulties, cervical spine issues, walking limits and lifting limits that her opinion relies on.

Turning to treatment during the period in issue, Plaintiff had an encounter with a gastroenterologist, Dr. Nabil Toubia, who had previously ordered diagnostic tests (including endoscopy and colonoscopy); he found that the "work up so far [is] negative"), as well as that she "had several testing done through her PCP which were unremarkable." Tr. 305. No follow-up was recommended (beyond repeat colonoscopy in ten years). Id. Also during the period in issue, Plaintiff continued to see Dr. Hansel. Tr. 388-428. Based on Plaintiff's complaints, Dr. Hansel continued to order tests (including Holter monitor, endoscopy, colonoscopy, x-ray) that returned largely normal results, except for Plaintiff's ongoing diagnosis of fatty liver.[2] Tr. 390-406, 410-13, 417-24; see Tr. 388-89, 407 (Dr. Hansel assesses all tests as "reassuring," "no findings" or "negative"). Dr. Hansel performed four physical examinations during the period in issue. As with her 2021 examination, the objective findings are entirely normal, except for dry skin at the April 2023 appointment, including that Plaintiff was consistently "well appearing, NAD." Tr. 388-89, 408, 425-26, 429. Regarding Plaintiff's ability to walk/stand/sit/lift, Dr. Hansel did not note any limitations. Instead, she endorsed Plaintiff's intent to "get out . . . walking," as well as noting that Plaintiff was "fine with walking," although she found bending for yoga still difficult. Tr. 361-62; see Tr. 366 ("likes to go walking – does have bands left over from PT – will start doing those"). Dr. Hansel's treating notes for the period in issue largely

---

[2] Plaintiff does not dispute the ALJ's finding that fatty liver (hepatic steatosis) is a diagnosed impairment that did not pose limitations prior to or during the period in issue. See Tr. 17.

focus on Plaintiff's recent dizziness, which she noted was "much improved," Tr. 389, and for which Plaintiff continued to decline medication or treatment, Tr. 362. As in her 2021 treating notes, Dr. Hansel's treating notes for the period in issue do not mention current complaints or treatment for such symptoms as right shoulder/neck pain, memory changes, word finding difficulties, cervical spine issues, walking limits and lifting limits, which are referenced as support for her opinion.

On June 13, 2023, two months after her last appointment of record (shortly before the ALJ's hearing), Dr. Hansel signed her "Physical Medical Opinion." Tr. 436. In this opinion, Dr. Hansel notes diagnoses of "postconcussion," cervical disc disease and myofascial pain, all of which the ALJ accepted; the opinion also notes the ENT's diagnosis of persistent postural perceptual dizziness (for which Plaintiff declined treatment), which the ALJ essentially accepted, albeit as vertigo. Tr. 436. However, in support of her findings of severe functional limitations, Dr. Hansel relies on memory/word retrieval difficulties that neither she nor any other treating professional diagnosed or treated,[3] and on neck/shoulder pain and cervical spine issues that Dr. Brennan had long since opined were largely resolved.[4] For sit/walk/stand limits, in contrast to her treating notes, which record, for example, that Plaintiff is "fine with walking," Dr. Hansel opines to very severe limits (permitting no more than sedentary work) that the ALJ's light exertional RFC does not endorse; although, for lifting limits, Dr. Hansel's opinion is only somewhat more limiting than the ALJ's RFC, and for postural limits (such as climbing ladders and stairs), Dr. Hansel's opinion is substantially similar to the ALJ's RFC. Markedly different

---

[3] As support for this finding, Dr. Hansel referred to a brain MRI from 2017 that both she and the neurologist interpreted as having no concerning findings. Lisa M., 2021 WL 5035985, at *2.

[4] As support for this finding, Dr. Hansel referred to a 2017 CT scan, which reflects findings that were treated by Dr. Brennan. However, at his final encounter with Plaintiff in 2020, Dr. Brennan performed an examination and made no adverse findings on physical examination; after that, treatment terminated. See Tr. 294.

from the ALJ, who found that Plaintiff could sustain a normal work schedule as long as the work is non-pressured and based on simple instructions, Dr. Hansel opines that, during the normal workday, Plaintiff would need additional breaks every fifteen minutes of at least five minutes, would be off-task 25% of the time and would be absent more than four days a month.  Tr. 437-39.  Dr. Hansel also limited her opinion, noting that "emotional factors [do not] contribute to the severity of [her] patient's symptoms and functional limitations."  Tr. 436.

The ALJ considered Dr. Hansel's opinion.  While parts of his RFC are consistent with parts of the opinion, he found unpersuasive its findings of no more than sedentary walking/sitting/standing/lifting and of more than 25% off-task time due to breaks every fifteen minutes and more than four days a month of absenteeism.  Tr. 20.  As grounds, the ALJ relied on the lack of support for such limits in Dr. Hansel's treating notes, as well as the inconsistency of these opinions with Dr. Hansel's treating recommendations urging Plaintiff to increase walking and exercise and with Plaintiff's own statements regarding walking and activities of daily living.  See, e.g., Tr. 48, 50-52, 56 (Plaintiff testifies she sometimes does laundry, helps with yard work, does vacuuming, dusts ceiling fans, does grocery shopping and puts groceries away, has driven "a couple of times" to pick up granddaughter); Tr. 361 (Plaintiff tells Dr. Hansel walking is fine but bending is difficult); Tr. 361 (Plaintiff tells Dr. Hansel she is not walking as much as she wants); Tr. 367 (Dr. Hansel recommends gradual increase in walking and exercise); Tr. 428 (Dr. Hansel notes "did start walking a bit" and lost eight pounds).

## II.    **Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (internal quotation marks omitted). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. <u>Dickinson v. Zurko</u>, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in <u>Biestek</u>, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. <u>Irlanda Ortiz v. Sec'y of Health & Hum. Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); <u>Brown v Apfel</u>, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), <u>aff'd</u>, 230 F.3d 1347 (1st Cir. 2000) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. <u>Rodriguez Pagan v. Sec'y of Health & Hum. Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987). The determination of substantiality is based upon an evaluation of the record as a whole. <u>Frustaglia v. Sec'y of Health & Hum. Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); <u>Brown</u>, 71 F. Supp. 2d at 30; <u>see</u> <u>Parker v. Bowen</u>, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied). The Court's role in reviewing the Commissioner's decision is limited. <u>Brown</u>, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. <u>Id.</u> at 30-31.

III.    <u>**Disability Determination**</u>

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3); 20 C.F.R. § 416.905. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 416.920(a)(4)(v). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003). In particular, the social security applicant has the burden both of proof and production for the ALJ's determination of the claimant's RFC. Burcham v. Saul, Civil Action No. 19-10901-RWZ, 2020 WL 13558145, at *2 (D. Mass. June 23, 2020).

### B.    Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 416.920c.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 416.920c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[ ] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Id. at 5854.

### IV.    <u>Analysis</u>

Plaintiff relies on two arguments as reasons why the Court should remand her claim.

First, she contends that the ALJ gave an insufficient explanation for rejecting the Hansel opinion's sedentary exertional limits and significant off-task/absenteeism time.  The Court finds no error in the ALJ's approach to the Hansel opinion.  When the decision is read as a whole, and the record reviewed, as summarized above, it is clear that the ALJ's well-supported explanation for his finding that Dr. Hansel's exertional limits and off-task-time/absenteeism opinions are unpersuasive is more than adequate.  Further, the Court's independent review of the record confirms that this determination is one where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion."  Manuel P. v.

Saul, C.A. No. 20-234PAS, 2021 WL 949345, at *2 (D.R.I. Mar. 12, 2021) (internal quotation marks omitted).  Confirming that the ALJ got it right is Plaintiff's counsel's summary of the evidence during the ALJ's hearing; as she contends, Dr. Hansel's finding of "a less than sedentary capacity with having to take excessive breaks" is "due to pain, specially . . . from the cervical and shoulder issues," Tr. 37, which are the precise issues that the record (including Dr. Hansel's own treating notes) undisputedly establishes had resolved by the period in issue.

Second, Plaintiff contends that the ALJ acknowledged at Step Three that Plaintiff has moderate concentration/persistence/pace limits due to dizziness but that his RFC limitation to work involving no more than simple instructions with no pressure from the requirements of an assembly line, quotas or a production rate fails adequately to accommodate this limitation.  This argument fails because it is Plaintiff's burden both to produce evidence and to prove RFC limitations.  See Mosconas v. Saul, No. 19-2049, 2020 WL 6255298, at *1 (1st Cir. Sept. 15, 2020); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  As the Acting Commissioner accurately contends, apart from Plaintiff's undisputedly unreliable subjective statements[5] and Dr. Hansel's unpersuasive opinion (which the ALJ appropriately found in relevant part to be both unsupported and inconsistent) that Plaintiff cannot handle a normal work schedule, Plaintiff fails to point to any evidence, including any evidence pertaining to the symptoms of perceptual dizziness, that supports a more limited RFC than what the ALJ found.  See Julee A. v. O'Malley, C.A. No 23-206MSM, 2024 WL 1880762, at *7 (D.R.I. Apr. 30, 2024) ("[i]t is the . . . manifestations of the illness which control the proper outcome of a disability proceeding")

---

[5] Plaintiff has not challenged the ALJ's well supported finding that her testimony "was not only inconsistent with the record but was contradictory," as well as that her allegations regarding the extreme severity of her perceptual dizziness are unsupported by the sparse treating record and inconsistent with such information as was available about her activities of daily living.  Tr. 21.  Also supportive of the ALJ's credibility finding is Plaintiff's consistent declination of medication for the perceptual dizziness.  See Howcroft v. Colvin, C.A. No. 15-201S, 2016 WL 3063858, at *13 (D.R.I. Apr. 29, 2016), adopted, 2016 WL 3072254 (D.R.I. May 31, 2016) (in examining credibility, appropriate for ALJ to consider claimant's refusal of recommended treatment).

(internal quotation marks omitted), adopted, 2024 WL 2701643 (D.R.I. May 24, 2024); Sherry
O. v. Kijakazi, C.A. No. 21-00249-JJM, 2022 WL 611500, at *8 (D.R.I. Mar. 2, 2022) ("The
RFC crafted by the ALJ is unique to Plaintiff and considers only functional limitations and
restrictions *that result* from an individual's medically determinable impairment or combination
of impairments.") (internal quotation marks omitted), adopted by text order (D.R.I. Apr. 11,
2022).  To the contrary, the evidence from the current application not only reflects Plaintiff's
ongoing declination of medication for dizziness, from which the ALJ may appropriately infer
that her symptoms are not as severe as alleged, see Mariano v. Colvin, C.A. No. 15-018ML,
2015 WL 9699657, at *11 (D.R.I. Dec. 9, 2015), adopted, 2016 WL 126744 (D.R.I. Jan. 11,
2016), but also Plaintiff's own report of improving symptoms from recent dizziness.  Tr. 389.
And the evidence from the prior application affirmatively ruled out work-preclusive RFC limits
on concentration/attention caused by dizziness.  Tr. 299 (comprehensive neurological
examination to address dizziness in November 2020 results in finding of "normal attention span
and concentration").  And Dr. Hansel herself specifically eschewed reliance on any emotional
factors contributing to Plaintiff's symptoms.  Tr. 436.

Plaintiff's argument also fails because it clashes with the well-settled proposition that an
ALJ's Step Three finding of "moderate" mental limitations does not translate to a *per se* work
preclusive RFC limit.  See Cheyenne R. v. Kijakazi, C.A. No. 21-473WES, 2022 WL 18910866,
at *9 (D.R.I. Sept. 23, 2022) (citing Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 527
(1st Cir. 1989) (per curiam) ("[i]n light of these moderate restrictions . . . apart from [the
claimant] being relegated to jobs of an unskilled nature, the claimant's capacity for the full range
of light work was not significantly compromised") (second alternation in original)).  That is, a
"finding of moderate limitations in maintaining concentration, persistence, or pace, does not

necessarily preclude the performance of unskilled work," which is what the ALJ found to be within the scope of Plaintiff's RFC in this case.  Silva v. Berryhill, 263 F. Supp. 3d 342, 351 (D. Mass. 2017) (internal quotation marks omitted).  To translate moderate Step Three mental limitations into an RFC that is limited by the inability to attend and persist as required for a full-time work schedule, more is needed and Plaintiff has provided nothing to fill the gap.

At bottom, the Court finds that this ALJ struggled with a sparse record, exacerbated by the claimant's failure to supply requested information supportive of her application, and made a decision that is consistent with the principle that the Social Security Act is a remedial statute that must be liberally applied in that he carefully considered and appropriately weighed the evidence not only for the period in issue, but also for the prior period to develop an RFC that accommodates Plaintiff's limits based on the substantial evidence of record.  See Mary K. v. Berryhill, 317 F. Supp. 3d 664, 667 (D.R.I. 2018).  The Court further finds that the ALJ's determination that certain aspects of Dr. Hansel's opinion were unsupported by and inconsistent with both her treating notes and the other clinical observations and statements in the record is adequately explained, well supported by substantial evidence and consistent with applicable law. The Court further finds no error in the ALJ's well-supported determination that, despite her perceptual dizziness, Plaintiff can sustain a normal work schedule, as long as the work is limited to simple instructions without the pressure of quotas or production rate requirements.

**V.    Conclusion**

Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 9) is DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 10) is GRANTED.  The Clerk is directed to enter judgment in favor of the Commissioner.

/s/ Patricia A. Sullivan

PATRICIA A. SULLIVAN
United States Magistrate Judge
March 6, 2025